## EDWARD W. BARRETT *vs.* CITY OF MEDFORD.

Middlesex.   December 8, 1925. — January 7, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, & SANDERSON, JJ.

*School and School Committee*, Employment of a committee member at salary.   *Municipal Corporations*, Officers and agents.

The duties of a salaried school physician (sometimes called a medical inspector) appointed under G. L. c. 71, §§ 54, 55, are incompatible with the duties of a member of the school committee, and therefore a school committee cannot lawfully elect one of their own members to that office.

CONTRACT for $660 upon an account annexed for services as medical inspector of schools.   Writ dated August 1, 1924.

In the Superior Court, the action was heard by *Broadhurst*, J., without a jury, upon an agreed statement of facts. Material facts are stated in the opinion.   There was a finding for the defendant.   The plaintiff appealed.

*J. J. Shaughnessy*, (*P. F. Shaughnessy* of New York with him,) for the plaintiff.

*L. G. Brooks*, City Solicitor, for the defendant.

PIERCE, J.   This is an action to recover for services rendered as school physician, or "medical inspector," of the city of Medford, from September 1, 1923, until August 1, 1924, eleven months at $60, a total of $660.   The answer, in addition to a general denial, alleges that the "appointment [of the plaintiff] was *ultra vires*, against public policy and otherwise void."   The case was heard in the Superior Court, without a jury, on an "Agreed Statement of Facts."   The judge found for the defendant, and the plaintiff appealed to this court.

The pertinent facts are that on November 12, 1917, the plaintiff was appointed by the school committee of the defendant city temporary medical inspector for all the schools. On June 14, 1920, his appointment was made permanent and placed under the civil service.   The appointment was made under G. L. c. 71, § 53, and previous similar statutes.   There-

after, he continued to serve as medical inspector by appointment of the school committee and under the civil service at a monthly salary of $60, until the bringing of this action. During all this period he was a member of the school committee, elected every three years, but took no part officially as a member of said school committee in his appointment by said school committee as such "medical inspector." After September 1, 1923, owing to the refusal by the mayor to approve the payroll item covering the plaintiff's salary as medical inspector, he no longer received a salary for such services. Nevertheless, he continued to perform the duties of medical inspector and to serve as a member of the school committee. On August 1, 1924, he brought this action against the city for $660, the amount he would have received to that date had his salary as medical inspector been continued and paid.

"The duties of the medical inspector are regulated partly by statute, (G. L. c. 71, §§ 54, 55) partly by the school committee and partly by circumstances as they arise." Under this statute he examines all school children referred to him; he examines teachers, janitors and school buildings; he grants employment certificates to children who are entitled to work; and as a part of his duties, at the discretion of the school authorities, he examines girls who play basket ball and boys who play hockey. The school committee, under G. L. c. 71, § 59, elects, and fixes the compensation, of a superintendent of schools, who "shall be the executive officer of the committee, and under its general direction." It appoints a school physician, (herein called medical inspector) under § 53, and fixes his compensation. Under St. 1904, c. 173, G. L. c. 71, § 52, "No member of a school committee in any town shall be eligible to the position of teacher, or superintendent of public schools therein." Under the rules of the school committee the superintendent, or the executive officer of the school committee, § 59, *supra*, has general care and supervision of the schools, and nominates "all principals, supervisors, teachers, janitors, . . . and other school employees," and makes recommendations "to the school committee regarding their duties, salaries, and

dismissal." The charter or ordinances of the defendant city do not forbid the school committee from appointing one of its own members as medical inspector of schools and the rules of the school committee of the defendant city make no reference to it.

Having in mind that a member of either branch of a city council or of a municipal board of a city is not permitted to be personally interested directly or indirectly in a contract made by the city council, or other branch thereof, or by such board, or by authority derived therefrom, in which the city is an interested party, G. L. c. 268, § 9; that no "member of the city council shall, during the term for which he was chosen . . . be eligible to any office the salary of which is payable by the city," G. L. c. 39, § 8; that a board of health of a city, who are authorized to appoint a quarantine physician under an ordinance giving him a compensation fixed by the city council, may not appoint one of their own members such quarantine physician, *Gaw* v. *Ashley*, 195 Mass. 173; that no member of a school committee shall be eligible to serve as teacher or superintendent in the public schools, St. 1904, § 173; we think a school committee, in the absence of a statute permitting it, cannot elect one of themselves to the salaried office of school physician. The duties he is to perform as physician are incompatible with the supervisory duties which as a member of the committee he should exercise over the incumbent of the office of school physician. Consistently he cannot be master and servant.

Again, under the rules of the committee and G. L. c. 71, § 59, the superintendent of schools, under the direction of the school committee, is the "executive officer of the committee" who, among other services, has the duty to nominate for election "all principals, supervisors, teachers, janitors . . . and other school employees, make recommendations to the school committee regarding their duties, salaries, and dismissal." It is to be further observed that the superintendent of schools may hold his office by the deciding vote of the member whom he may subsequently nominate for school physician, with an accompanying recommendation of a stated salary for the incumbent of that office.

The case of *Sylvester* v. *Webb*, 179 Mass. 236, can be distinguished from the case at bar, by the fact that the circumstances of that case were fully known to the inhabitants of Scituate and were discussed and voted upon at two special town meetings without repudiation; and by the finding of the court that the alleged illegal contract was ratified by the town.

*Judgment for the defendant.*