Carroll,
May 2, 1950. } No. 3883.

GEORGE W. ROBERTS, *Ex'r v.* TAMWORTH & *a.*

224

*Burnham B. Davis*, for the plaintiff, filed no brief.

*Rupert F. Aldrich* (of Maine) and *Varney, Levy & Winton* (*Mr. Aldrich* orally), for legatees, Everts and Roscoe Mayberry.

*Benjamin L. Berman* (of Maine) and *Arthur J. Reinhart*, for legatee, Giola Page.

The remaining defendants *pro se* joined in the prayer for the construction of the will or entered no appearances.

KENISON, J.   The will contains twenty-two clauses and names thirty-three as legatees or substituted legatees.   The language of the will and the fact that an attesting witness was an attorney indicate

that the draftsman was familiar with legal terms (*Mulvanity* v. *Nute*, 95 N. H. 526) and "the principle of lapse of legacies." *Franklin Nat. Bank* v. *Gerould*, 90 N. H. 397, 398. Thus four clauses of the will provided for substituted legatees "in the event I outlive him." Her bequests to two churches contained the express provision that they "shall not lapse because of error in giving corporate names." In another clause of the will bequeathing household furniture to two nephews in equal shares, the testatrix stipulated "survivorship as of the time of my death."

The thirteenth clause of the will by its express terms called for survivorship of the testatrix and since both legatees predeceased her, the bequest falls into the residuary clause of the will. The fourteenth and fifteenth clauses of the will are not controlled by the antilapse statute (R. L., c. 350, s. 12) as its conditions are not met. The statute requires that the legatees must have "heirs in the descending line" in order that the legacies will not lapse. There being none, the bequests become a part of the residue of the estate. The testatrix knew how to prevent lapses when she so desired and the failure to do so in these two clauses is indicative of an intentional omission.

The construction placed on the clauses of the will discussed above are consistent with each other, the anti-lapse statute and the will as a whole. The exception appears in the fifth clause. It is frequently said in will cases that the testatrix's intention is the sovereign guide in the interpretation of a will. No one disputes the truth of this beguiling and sonorous statement but candor compels the admission that it is of doubtful utility in determining intent where there may be none. "In many cases the court is ascertaining not what the [testator] actually intended in regard to a particular matter but what he would have intended if he had thought about the matter." 2 Scott, Trusts, s. 164.1 *p.* 831. If the testatrix did not think about the matter, it is difficult to say that she had an intent with respect to it. In that case the court is looking for a black hat in a dark room; if the court locates it there at all, it will be on its own head and not because of any light left by the last will and testament. Discerning critics, other than Scott, have recognized this to be true. Gray, The Nature and Sources of the Law (1921) 174-176; Curtis, A Better Theory of Legal Interpretation (1949) 4 Record 321, 324, 325. If courts can fairly and reasonably ascertain the decedent's desire from the will, intellectual honesty requires that they say so without resorting to a fiction of intent where none existed. See *Petition of Wolcott*, 95 N. H. 23.

If the draftsman thought of the contingency that one of the legatees

in the fifth clause might not survive the testatrix, it was not specifically expressed. As a matter of logic it may be argued that the share of Maud Huntress becomes part of the residue. Considering the personal nature of the bequest, the fact that all of her personal belongings except furniture were given only to the three named in this clause, that the linens were in the nature of heirlooms, that their value was more sentimental than monetary and the unlikelihood that the testatrix would desire that a one-third interest therein would be divided among six possible residuary legatees, the argument appears less convincing. "Where the testator's desire may be gathered from the will, 'strict logic' need not be controlling." *Petition of Wolcott, supra,* 26. All the legatees named in this clause were daughters of her cousins, and there are persuasive reasons indicating a purpose to dispose of her linens and bedding in this clause of the will rather than in the residuary clause. *Wilkins* v. *Miltimore,* 95 N. H. 17. In accordance with the analagous case of *Fowler* v. *Whelan,* 83 N. H. 453, the executor is advised that the bequest belongs to the surviving legatees Lillian D. Gordon and Marjorie Hamlin.

A substantial share of the testatrix's estate was given to her six named cousins each of whom was bequeathed a pecuniary legacy of one thousand dollars and made a residuary legatee in the twenty-first clause of the will. Two of the residuary legatees, Charles Berry and Mary Kimball, predeceased the testatrix leaving no lineal descendants and the third, George Huntress, died before testatrix, leaving only a daughter who likewise predeceased the testatrix. While the anti-lapse statute may be applicable to residuary bequests (*Stearns* v. *Matthews,* 94 N. H. 435, 438; *In re Rose Estate,* 95 N. H. 208), it cannot apply here because there are no lineal descendants to "take the estate bequeathed." R. L., c. 350, s. 12. The use of the phrase "and their heirs forever" was a proper, although not a required, method of defining a fee simple interest in the residue but it did not prevent a lapse from taking effect. *Loveren* v. *Donaldson,* 69 N. H. 639.

If the residuary clause were to be construed by itself, it would follow that the cousins would take individually and not as a class. 3 Page, Wills (3d *ed.*) s. 1049. Under this view one half of the residue would pass as intestate property to distant relatives. "But no such narrow rule prevails." *Fowler* v. *Whelan,* 83 N. H. 453, 456. The rule has been well stated in this jurisdiction in *Hall* v. *Smith,* 61 N. H. 144, 146; "Though the bequest be to individuals by name, yet if it appears upon the whole will that the testator considered them as constituting a class, . . . that intention will prevail." Other cases

employing similar reasoning are *Brewster* v. *Mack*, 69 N. H. 52; *Romprey* v. *Brothers*, 95 N. H. 258.

There are several factors to be gathered from the agreed statement of facts and the will as a whole which show on the balance of probabilities that the bequest to the named cousins in the residuary clause was a class gift. The residuary legatees were first cousins and described as cousins in prior clauses by which each was bequeathed a legacy of one thousand dollars in addition to the residuary bequest. No alternative gift was provided as had been done in previous portions of the will indicating that none was thought necessary. The clause does not provide that the named legatees shall take equally or in equal shares as frequently used to connote individual gifts. In the residuary clause as in the fifth clause the testatrix was "group-minded." 3 Restatement, Property, *Introductory note*, Class Gifts 1448. The detailed provisions of the will clearly indicate that the testatrix was disposing of all of her estate by will and the omission of certain cousins in the will was therefore intentional. *Merchants &c. Bank* v. *Berry*, 93 N. H. 388. There being no "evidence of a purpose of intestacy" (*Kemp* v. *Dowling*, 94 N. H. 198, 200), it is the duty of the court to give effect to the "group-mindedness" of the testatrix "to establish . . . the existence of a class gift." Restatement, *supra*. The last clause of the will provided that inheritance taxes were to be paid out of the "residue of my estate, if any" and that "money legacies" were to be prorated if the estate "is not sufficient to pay all in full." This clause is consistent with the will as a whole in indicating no purpose that the six shares of a small residue should be multiplied by intestacy or divided among people not named. The residue constitutes a class gift which goes to the three remaining residuary legatees, Everts Mayberry, Roscoe Mayberry and Giola Page.

The procedural remedy of a petition for instructions in the Superior Court by an executor for advice as to the construction of a will is not improper in advance of a decree of distribution by the Probate Court in view of *Duncan* v. *Bigelow, ante*, 216.

*Case discharged.*

All concurred.