RALPH W. IGOE, executor, *vs.* ELINOR DARBY & others.

Worcester.  September 26, 1961. — November 7, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Devise and Legacy,* Specific legacy, Gift of stock.

Under a will bequeathing all the stock owned by a testatrix in a corporation at the time of the execution of her will, seventy-six shares, to her grandchildren, twenty-five shares to one grandchild, twenty-five shares to another grandchild, and twenty-six shares to the third grandchild, each bequest of stock having coupled with it a specific gift of tangible personal property, the bequests of stock were specific, not general. [148]

Where a testatrix owned shares of stock of a corporation at the time she executed a will containing specific legacies of all those shares and a

residuary clause, and between that time and her death the stock was split on a three to one basis reducing its par value to one third of its former par value and she retained her original shares and received twice as many additional shares, on her death the specific legatees were entitled to the additional shares as well as the original shares. [149]

PETITION, filed in the Probate Court for the county of Worcester on October 5, 1960.

The case was heard by *Rice,* J.

*Walter J. Griffin,* for the respondents Elinor Darby and others.

*Henry C. Horner,* for the respondent Mary L. Kitaoka.

SPALDING, J. The executor of the will of Emily L. Daley brings this petition for instructions as to the distribution of 228 shares of common stock of American Telephone and Telegraph Company, hereinafter called American.

The evidence is reported and the judge made a report of the material facts. The facts are these: The testatrix executed her will on April 10, 1958. At that time she owned seventy-six shares of common stock of American with a par value of $100 per share. These shares were acquired in lots of varying amounts over a period of thirty years. In the spring of 1959, American split its common stock on a three to one basis. This split was to be effective for all stockholders of record as of April 24, 1959. Under the terms of the split the par value of the common stock was reduced to thirty-three and one third dollars per share. The old certificates, with the reduced par value, were to be retained by the stockholders and two additional shares for each old share were sent to the stockholders. On May 29, 1959, the testatrix received 152 additional shares, which together with the seventy-six already owned by her, made a total of 228 shares. These shares, having a total par value of $7,600, were owned by the testatrix at the time of her death on July 2, 1959.

The relevant provisions of her will are these: "First: To my grand-daughter, Elinor Darby, . . . twenty-five (25) shares of stock of American Telephone and Telegraph Company, and also my Chelsea china set. Second: To my

grandson, John S. Daley, . . . twenty-five (25) shares of stock of American Telephone and Telegraph Company, and also my gold-band china set. Third: To my grandson, Frank R. L. Daley, . . . twenty-six (26) shares of stock of American Telephone and Telegraph Company, and also all other chinaware except as hereinbefore mentioned and located in my home at the time of my death. . . . Seventh: All the rest, residue and remainder of my estate in equal shares to my grandchildren, Elinor Darby, John S. Daley, Frank R. L. Daley and my sister, Mary L. Kitaoka, share and share alike.''

The judge ruled that the bequests of American stock were general legacies and that seventy-six shares went to the legatees named in clauses First, Second, and Third, the additional 152 shares passing under the residuary clause. From a decree in accordance with this ruling, the legatees named in clauses First, Second, and Third appealed. They contend that the bequests were specific and that they were therefore proportionately entitled to the extra shares resulting from the split.

Usually a gift of stock (such as ''X shares of Y stock'') is general; but ''an intent to make the gift specific may¹ be shown; and, under the rule of construction, the testator's intent must prevail if it can be ascertained from the language of the whole will read in the light of the circumstances known to the testator at the time of its execution, and no positive rule of law forbids.'' *Desoe* v. *Desoe,* 304 Mass. 231, 234. *First Natl. Bank* v. *Charlton,* 281 Mass. 72, 75. And with respect to such gifts it has been said that a ''very slight indication of an intention to give shares then in . . . [the testator's] ownership is enough to make the legacy specific.'' *Thayer* v. *Paulding,* 200 Mass. 98, 101. Doubtless the tendency of courts to favor general, rather than specific, legacies is chiefly to avoid the harshness of ademption. See Paulus, Special and General Legacies of Securities—Whither Testator's Intent, 43 Iowa L. Rev. 467, 469–470.

But ademption is not involved here and the reason for

preferring to treat a bequest of stock in a named corpora-
tion as a general legacy does not exist.  At all events, the
rule of preference in such a case is merely one of construc-
tion and must yield in a case where the intent of the testa-
tor to make a specific legacy can be, as we think it can be
here, ascertained from the entire will.  See *Foote, appel-
lant,* 22 Pick. 299, 302; *Desoe* v. *Desoe,* 304 Mass. 231.  It
will be noted that the number of shares bequeathed corre-
sponds exactly with the number of shares (seventy-six)
owned by the testatrix at the time of the execution of the
will.  This may not be very significant in the case of round
numbers, but it is of considerable significance in the case,
as here, of an odd amount.  In *White* v. *Winchester,* 6 Pick.
48 (a case involving bequests of odd amounts of stock which
corresponded exactly with the amount owned by the testa-
tor), it was said by Wilde, J., at page 56, "Now when one
by his will gives a certain amount of stock, or the income of
stock, in a particular bank, or other corporation, and at the
time of making the will, he is the owner of the exact amount
of stock given, the presumption is strong, that he intended
to give the stock of which he was the owner.  Such is the
case under consideration."[1]  See *Metcalf* v. *Framingham
Parish,* 128 Mass. 370, 373; *Harvard Unitarian Soc.* [v.
*Tufts,* 151 Mass. 76, 78.  See also *Drake* v. *True,* 72 N. H.
322; *Jewell* v. *Appolonio,* 75 N. H. 317.  When a testatrix,
as here, owns seventy-six shares of stock and bequeaths
that precise amount in three bequests of twenty-five, twenty-
five, and twenty-six shares to her three grandchildren, we
think that it is more probable than otherwise that she in-
tended to dispose specifically of the stock she then owned.

Also of significance on the matter of intent is the fact
that in the case of each bequest of stock the testatrix
coupled it in the same clause with a gift of personal prop-
erty which was clearly specific.  We think this shows that
the testatrix had in mind property that she owned at the
time and that it was her intention to dispose of it.  See

[1] There is, however, considerable authority to the contrary.  See Page on
Wills, § 1397, and cases collected in note 2.

*Sherman* v. *Riley,* 43 R. I. 202, 207, *In re Hart's Will,* 205 Misc. (N. Y.) 916, and *In re Pratt,* [1894] 1 Ch. 491, 493.

Holding, as we do, that the legacies of stock under articles First, Second, and Third are specific, we are of opinion that the legatees therein named are entitled to all 228 shares of the common stock, that is, seventy-five, seventy-five, and seventy-eight shares, respectively. This question appears to have arisen but twice in our decisions (*Fall River Natl. Bank* v. *Estes,* 279 Mass. 380; *First Natl. Bank* v. *Union Hosp. of Fall River,* 281 Mass. 64) and in each case the result here reached, the point not having been argued, was assumed without discussion. It is generally held elsewhere that additional shares resulting from a stock split, of the type here involved, go to the specific legatees. *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 367–369. *Heckler* v. *Young,* 264 Ill. App. 34, 42. *Goode* v. *Reynolds,* 208 Ky. 441. *Gorham* v. *Chadwick,* 135 Maine, 479, 484–485. *In re Mandelle's Estate,* 252 Mich. 375, 382. *Adams* v. *Conqueror Trust Co.* 358 Mo. 763, 773. *Chase Natl. Bank* v. *Deichmiller,* 107 N. J. Eq. 379. *Matter of Martin,* 252 N. Y. 582. *Matter of Hicks,* 272 App. Div. (N. Y.) 594. *Clegg* v. *Lippold,* 123 N. E. 2d 549, 559 et seq (Ohio). *Will of Hinners,* 216 Wis. 294, 300–305. *In re Clifford,* [1912] 1 Ch. 29. See *Pope* v. *Hinckley,* 209 Mass. 323. See also Paulus, Special and General Legacies of Securities — Whither Testator's Intent, 43 Iowa L. Rev. 467, 504–506, and cases collected in note 140. Following the stock split the interest of the testatrix in American remained precisely the same; the change was one of form rather than substance. In receiving all of the shares the legatees are getting no more than they would have received had there been no split. It would be manifestly unjust to hold that they were not entitled to the additional shares resulting from the split.

The decree of the Probate Court is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*